UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VERLINDA CARSTON, o/b/o D.F.,

                      Plaintiff,

   -against-                                    1:06-CV-872
                                                         (LEK/DRH)
MICHAEL J. ASTRUE,[1]

                      Defendant.
_____

**DECISION AND ORDER**

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Verlinda Carston ("Plaintiff") filed an application for Supplemental Security Income ("SSI") on behalf of her minor son, DF, on May 26, 2004. Administrative Transcript ("AT") 38-40 (Dkt. No. 5). The application was denied initially on October 14, 2004. AT 18-21. A request was made for a hearing. AT 22. A hearing was held before an Administrative Law Judge ("ALJ") on November 22, 2005. AT 237-69. In a decision dated March 14, 2006, the ALJ found that Plaintiff was not disabled. AT 8-16. The Appeals Council denied Plaintiff's request for review on May 19, 2006. AT 4-7. Plaintiff commenced this action on July 17, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Claims**

Plaintiff makes the following claims:

(1) Defendant's brief should be stricken because it was filed late. Dkt. No. 13 at 5.

(2) The ALJ failed to consider Plaintiff's impairments in combination. Dkt. No. 23 at 18-

---

[1] The Complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

19.

    (3)  The ALJ erred in evaluating the medical evidence.  Dkt. No. 23 at 19-21.

    (4)  The ALJ failed to develop the record.  Dkt. No. 23 at 21-23.

    (5)  The ALJ failed to discuss why DF's impairments did not meet or equal a listed impairment.  Dkt. No. 23 at 23-24.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Dkt. Nos. 10 & 16.

**C.**    **Facts**

Plaintiff's son, DF, was born in 1999.  AT 38, 43.  Plaintiff alleges that DF is disabled due to "emotional problems."  AT 44.  Plaintiff explained that DF acts out violently in large groups, is mean, hits, and grabs forks and knives in order to "stab people."  Id.  Plaintiff alleges that DF became disabled on April 20, 2004.  Id.

    **a.**    **Mid-Hudson Family Health Institute**

From November 29, 1999 to July 20, 2004, DF received treatment for various conditions at the Pediatric Acute Care unit of Mid-Hudson Family Health Institute.  AT 118-55.  During this time, DF was diagnosed as suffering from "behavior problems."  AT 118, 125-26.  On November 26, 2003, Dr. Perzley noted that DF is loud and hyperactive but that DF was too young to diagnose as suffering from Attention-Deficit Disorder ("ADD").  AT 132.

    **b.**    **Benedictine Hospital**

On March 19, 2003 and April 3, 2003, DF underwent a preschool evaluation by Kathryn Brocker, M.S. of Benedictine Hospital's Communication Disorders Department.  AT 82.  In a summary report, it was noted that DF's cognitive development falls within the average range of cognitive functioning; socialization is within the average range; fine and gross motor skills are in

the adequate range; written communication is adequate; and self-help/adaptive behavior is within the adequate range. Id. However, it was also noted that DF often has difficulty interacting with his peers and tends to be aggressive. Id. Moreover, DF's expressive and receptive language skills are within the moderate-low range and articulation delays were noted by the examiner. Id.

In a preschool speech-language assessment performed on March 19, 2003, Heidi Bush, M.A., a speech-language pathologist at the Hospital's Communications Disorders Department, found that DF had a severe delay in expressive language skills and a moderate delay in receptive language skills. AT 85-86. She concluded that "[a]ll skills are suspected to further decrease when functioning in a classroom or distracting environment, or when attention is not engaged." AT 91.

In a psychological evaluation performed on April 3, 2003, Margaret Fleming Ali, M.A., a school psychologist at the Speech and Hearing Center of the Hospital, found that DF is functioning in the average range of cognition. AT 96. Overall Adaptive Behavior and Overall Communication Skills are in the adequate range. Id. However, significant articulation difficulties and several behavioral problems were noted. Id. Specifically, DF has difficulty interacting successfully with peers, exhibits aggression at times, is often disruptive, and acts out in inappropriate ways. Id. Also, DF exhibits symptoms of attention-deficit hyperactivity disorder ("ADHD"), as well as depression. AT 96-97.

The record contains a May 5, 2003 Social History Report by Andrea Jarvis, M.S.Ed of the Hospital's Communication Disorders Department. AT 83-84. Ms. Jarvis noted that during the day, DF attends "Headstart," which reported that DF "has some difficulty interacting and sharing with peers" and that "he has used physical intimidation and aggression to get what he wants. He was reported as throwing a chair at school because he was angry." AT 84.

### c.    Community Rehabilitation Center of United Cerebral Palsy of Ulster County, Inc.

The record contains an Annual Speech-Language Therapy Re-evaluation Report by speech-language pathologists Alyssa Rothenberg, M.Sc. and Christina Colvin, M.S.  AT 98-105, 114-17, 182-89.  Based on examinations performed during January and February of 2004, DF was diagnosed as suffering from a moderate expressive language delay; a mild delay in expressive vocabulary; and mild stuttering.  AT 98, 182.  DF's expressive language delay is characterized by decreased verbal organization and reasoning ability.  Id.

On March 28, 2004, Regina Rothkopf, special education teacher, noted in an Annual Education Evaluation that DF undergoes counseling one-time per week and speech therapy three-times per week.  AT 110, 194.  She noted that DF enjoys preschool and is eager to help in the classroom.  Id.  She noted, however, that DF's behavior is a "major concern" that often interferes with classroom instruction.  Id.  She noted his violent nature, which is often precipitated by "incidental" events.  Id.

On March 29, 2004, Patrick McCabe, M.S., Ed., a therapist at the Psychology Department of United Cerebral Palsy, stated that DF undergoes play therapy.  AT 107, 191.  Mr. McCabe described DF as a "troubled little boy" who has an impaired ability to "open up" and discuss his emotions. AT 108, 192.

In a July 28, 2004 discharge summary report by speech-language therapists Ms. Rothenberg and Andrea Abramovich, M.S., it was noted that DF "graduated" from Community Rehabilitation Center and will be receiving "education and therapeutic programming" from his school district.  AT 181.

### d. Ulster County Mental Health Department

On June 17, 2004, DF was evaluated by Lyssa Israel, Ph.D. of the Ulster County Mental Health Department. AT 213-18. Dr. Israel diagnosed DF as suffering from anxiety disorder not otherwise specified ("NOS") and assigned DF a score of 45 on the Global Assessment of Functioning scale.[2] AT 217.

On January 14, 2005 and January 28, 2005, DF was evaluated by Donna Newsome, M.D., a psychiatrist at the County Mental Health Department. AT 219-25. Dr. Newsome noted that DF is a "Special Needs Kindergarten student" whose behavior is variable, noting that "[s]ome days he does well and other days he has blowups over relatively small issues." AT 219-20. Dr. Newsome diagnosed DF as suffering from Posttraumatic Stress Disorder, severe, and noted that Dissociative Disorder NOS and Psychotic Disorder NOS should be ruled out. AT 225. Dr. Newsome assigned DF a GAF score of 40[3] and prescribed Seroquel.[4] Id.

On April 7, 2005 and July 1, 2005, Jacqueline Gantnier, MSW (DF's therapist), Wendy Lowe (DF's case manager), and Dr. Newsome completed "Treatment Plan Reviews." AT 226-231. The Reviews describe, *inter alia*, DF's treatment goals, outcomes, current diagnoses and medications. Id. The July 1, 2005 Plan specified that DF "sees Dr. Newsome" for management of

---

[2] The Global Assessment of Functioning ("GAF") scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health. Diagnostic and Statistical Manual of Mental Disorders, 34 (American Psychiatric Association, 4th Ed. Text Revision 2000) (hereinafter "DSM-IV-TR"). A GAF score between 41 and 50 indicates the existence of serious symptoms or a serious impairment in social, occupational, or school functioning. Id.

[3] A GAF score of 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV-TR at 34.

[4] Seroquel, an antipsychotic medication, is prescribed for the treatment of schizophrenia and bipolar disorder. The PDR Pocket Guide to Prescription Drugs, 1287 (8th ed. 2008).

5

his medication. AT 230.

The record also contains two "Medication Treatment Records" dated July 12, 2005 and July 29, 2005. AT 232-33. In the former record, Dr. Newsome noted that DF's dosage of Seroquel was going to be decreased and that DF no longer wanted to take medications because "he feels singled out." AT 232. In the latter record, Dr. Newsome noted that she was adjusting DF's dosage of Seroquel because DF's daycare is unable to administer his medication at the proper time. AT 233.

On April 20, 2006, Anya Moscovice, M.A., a psychology intern at the Mental Health Department noted that she saw DF for individual and family therapy sessions on a weekly basis since January 17, 2006. AT 236. She described DF's diagnosis as Reactive Attachment Disorder, Disinhibited type.[5] Id. She stated that DF exhibits a variety of emotional and behavioral difficulties, including dysregulated behavior, engaging in frequent tantrums, impulsivity, and oppositionality, across several settings. Id.

### e. Mid-Hudson Family Health Services Institute / Family Practice

From July 22, 2004 to September 9, 2005, Plaintiff was treated by various sources, including Dr. Lernice Henry, at Mid-Hudson Family Health Services Institute / Family Practice. AT 197-211. On March 29, 2005, Dr. Henry noted Plaintiff's claim that DF was not "doing any better" even though DF was taking Seroquel. AT 202. It was noted that DF was suspended from school and that he has "major temper tantrums." Id. Dr. Henry recommended that DF continue receiving psychiatric treatment. Id.

---

[5] The essential feature of Reactive Attachment Disorder is markedly disturbed and developmentally inappropriate social relatedness in most contexts that begins before age 5 years and is associated with grossly pathological care. DSM-IV-TR at 127.

6

      **f.**      **Leslie Helprin, Ph.D.**

On September 28, 2004, DF underwent an evaluation at the request of the agency by Leslie Helprin, Ph.D., a psychologist. AT 156-65. Dr. Helprin found that DF is "generally functioning cognitively in the low average to average range, but with a significant weakness in his borderline processing speed" which is affected by attentional difficulties. AT 158. Dr. Helprin diagnosed DF as suffering from ADHD, combined type, and noted that bipolar disorder should be ruled out. AT 159.

      **g.**      **Rita Petro, Psy.D.**

In a Childhood Disability Evaluation form dated October 7, 2004, Rita Petro, Psy.D. noted that DF had an impairment or combination of impairments that is severe but does not meet, medically equal, or functionally equal a listed impairment. AT 166-67. Dr. Petro indicated that DF has no limitations in the following domains: Moving About and Manipulating Objects, Caring for Yourself, and Health and Physical Well-Being. AT 169. She also indicated that DF has a less than marked limitation in the domains of acquiring and using information, and attending and completing tasks. AT 168. She found, however, that DF has a marked limitation in the domain of Interacting and Relating with Others. Id.

      **h.**      **Individualized Education Program 2005-2006**

The record contains an Individualized Education Program ("IEP") for the 2005-2006 school year. AT 66-70. It was recommended that DF receive "more intensive services" in a small classroom setting with clear expectations and a high level of structure. AT 67.

      **i.**      **Colleen Ambrosch**

On December 3, 2005, DF's special education teacher, Colleen Ambrosch, indicated in a "Teacher Questionnaire" that DF has been placed in the "most restrictive placement" in the school

district. AT 74. She noted that DF "requires significant redirection and positive reinforcement in order to perform appropriately throughout the day. He will frequently whine when tasks are challenging (specifically decoding, reading and waiting his turn)." Id. However, Ms. Ambrosch noted that DF "knows all his letters and sounds;" math is his strength; and that given one-to-one assistance, he is able to complete tasks. AT 74-75.

## II.   ADMINISTRATIVE LAW JUDGE'S DECISION

### A.   Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3),[6] the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. See Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Urtz v. Callahan, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. Johnson, 817 F.2d at 986.

---

[6] Section 1383(c)(3) makes section 405(g) applicable to the SSI program and provides the basis for this Court's jurisdiction and limitations of its review.

B.     **Determination of Childhood Disability**

In 1996, Congress significantly altered the childhood disability terrain, for purposes of eligibility for SSI benefits under the Social Security Act, by enacting the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105 (1996).[7] In accordance with the PRWORA, which took effect on August 22, 1996, an individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she

> has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to exclude from coverage any "individual under the age of 18 who engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).  By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.  20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); Ramos v. Barnhart, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).  The first step of the test, which bears some similarity to the familiar, five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); Kittles, 245 F. Supp. 2d at 488.  If so, then both statutorily and by regulation the child is ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(c)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, then the second step requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are severe – that is, which causes more than a minimal

---

[7] Entitlement to SSI benefits is governed by a federal program intended to provide benefits to needy aged, blind, or disabled individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381; see Schweiker v. Wilson, 450 U.S. 221, 223, 101 S. Ct. 1074, 1077 (1981).

functional limitation. 20 C.F.R. § 416.924(c); <u>Kittles</u>, 245 F. Supp. 2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7. If the existence of a severe impairment is discerned, the agency must next determine whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth by regulation, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings"). <u>Id.</u> Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); <u>Kittles</u>, 245 F. Supp. 2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability, and the twelve month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); <u>Ramos</u>, 2003 WL 21032012, at *8.

Under final regulations which became effective on January 2, 2001, and materially altered the test dictated under the superceded interim rules, <u>see</u> <u>Kittles</u>, 245 F. Supp. 2d at 488-89, analysis of functionality is informed by consideration of how a claimant functions in six areas which are denominated as "domains," and described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1); <u>Ramos</u>, 2003 WL 21032012, at *8. Those prescribed domains consist of:

    (i) Acquiring and using information;
    (ii) Attending and completing tasks;
    (iii) Interacting and relating with others;
    (iv) Moving about and manipulating objects;
    (v) Caring for [oneself]; and
    (vii) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i), is found in two of the listed domains. 20 C.F.R. § 416.926a(a); <u>Ramos</u>, 2003 WL 21032012, at *8. Functional equivalence also exists in the event of a finding of an "extreme" limitation, meaning "more than marked,"

representing an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(3)(i), in one domain.  20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8.

### C. ALJ Farrell's Findings

Using the three-step disability evaluation, ALJ Farrell found that 1) DF has not engaged in any substantial gainful activity; 2) DF has a severe impairment; and 3) DF's impairment does not meet, medically equal, or functionally equal any of the listed, presumptively disabling conditions set forth in Appendix 1 of the Regulations.  AT 11-16.  The ALJ evaluated DF's functional abilities in the six domains established by 20 C.F.R. § 416.926a(b)(1) and found that DF has a "marked" limitation in one domain of functioning.  AT 14.  The ALJ consequently concluded that DF was not disabled.  AT 15.

## III. DISCUSSION

### A. Request to Strike Defendant's Brief

The Court will first address Plaintiff's argument that Defendant's Brief should be stricken from the record because it was filed late.  Dkt. No. 13 at 5.

Plaintiff filed the Brief on October 6, 2006.  Dkt. Nos. 7 & 23.  Defendant's Brief was due forty-five days after service of Plaintiff's Brief, meaning that Defendant's Brief was due by November 20, 2006.  See General Order 18 at p. 2 (N.D.N.Y. Sept. 12, 2003).  Defendant filed the brief on December 7, 2006.  Dkt. No. 10.  Defendant made no request for an extension of time to file the Brief.

Initially, Plaintiff argued that Defendant's Brief should be stricken based solely on its untimeliness.  Dkt. No. 13 at 5.  Defendant responded by requesting that the Court excuse the "short

11

delay" and argued that Plaintiff alleged no prejudice. Dkt. No. 14 at 1. In response, Plaintiff stated that she "is always prejudiced when the Defendant files late." Dkt. No. 19 at 1.

In the absence of prejudice, late filings have been permitted. Spencer v. Wal-Mart Stores, Inc., No. 05-5157, 2006 WL 3072610, at *1 (10th Cir. 2006) (denying motion to strike a late reply brief where the delay was short and there was no prejudice); Kruger v. Apfel, 214 F.3d 784, 786-87 (7th Cir. 2000) (finding that district court should have considered plaintiff's late-filed objections to magistrate judge's report where objections were only one day late, and defendant was not prejudiced by late filing) (citing Hunger v. Leininger, 15 F.3d 664, 668 (7th Cir. 1994) (finding that objections to a magistrate judge's recommendation filed three weeks after the magistrate issued his recommendation were not egregiously late and caused no prejudice)); Crouch v. U.S., 665 F.Supp. 813, 814 (N.D. Cal. 1987) (denying request for sanctions where there was no prejudice to plaintiff from the late filing of the government's brief).

Moreover, the Second Circuit has "expressed a preference for adjudicating cases on the merits." Jackson v. Mahoney, 116 F.3d 465, 465 (2d Cir. 1997) (finding that "[a]lthough the defendants may have been remiss in filing a late [summary judgment] motion, it was only three days late. The delay did not prevent [plaintiff] from filing a response or otherwise prejudice him"); see also Johnson v. Maldonaldo, No. 05CV859S, 2008 WL 565482, at *1 (W.D.N.Y. Feb. 28, 2008) ("There is a strong preference that disputes be determined on the merits.") (citations omitted), Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) (finding that "absent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits"). In light of the foregoing, Plaintiff's request to strike Defendant's Brief is denied.

### B.     Consideration of Impairments in Combination

Plaintiff argues that the ALJ failed to state whether he considered the "cumulative and interactive effects" of DF's impairments. Dkt. No. 23 at 19. Plaintiff does not identify which specific effects the ALJ failed to discuss.

The Regulations provide that consideration will be given to the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be of the severity that such impairment or impairments could be the basis of eligibility under the law. 20 C.F.R. §§ 404.1523, 416.923; Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995).

In this case, the ALJ stated that he gave "full consideration to the entire record of evidence provided;" that he gave "careful consideration of all of the documentary evidence;" and that he "evaluat[ed] the totality of the record." AT 11-12. Further, the ALJ specifically found that the "limitations resulting from the effects of the claimant's impairments" do not meet or equal the criteria of any of the listed impairments. AT 16. Accordingly, Plaintiff's claim is unavailing.

### C.     Treating Physician

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician

does not sustain controlling weight.

Halloran, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))).  However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination.  Schaal, 134 F.3d at 505.

        **1.**    **Dr. Newsome**

Plaintiff argues that the ALJ erred by failing to assign controlling or significant weight to the opinion of Dr. Newsome and by ignoring "material portions" of Dr. Newsome's report.  Dkt. No. 23 at 19-21.  Plaintiff identifies Dr. Newsome as DF's treating psychiatrist.  *Id.* at 20.  Defendant argues that DF saw Dr. Newsome on one occasion and "does not have the relationship necessary to provide a longitudinal picture of DF's condition."  Dkt. No. 10 at 18.

The record reflects that DF was evaluated by Dr. Newsome on January 14 and January 28, 2005.  AT 219-225.  Thereafter, Dr. Newsome signed Treatment Plan Reviews on April 7, 2005 and

July 1, 2005. AT 226-31. The Reviews describe, *inter alia*, DF's treatment goals, outcomes, current diagnoses and medications. Id. The July 1, 2005 Review specified that DF "sees Dr. Newsome" for management of his medication. AT 230.

The record also contains two "Medication Treatment Records" dated July 12, 2005 and July 29, 2005. AT 232-33. In the former record, Dr. Newsome noted that DF's dosage of Seroquel was going to be decreased and that DF no longer wanted to take medications because "he feels singled out." AT 232. In the latter record, Dr. Newsome noted that she was adjusting DF's dosage of Seroquel because DF's daycare is unable to administer his medication at the proper time. AT 233.

The foregoing reflects that Dr. Newsome evaluated DF, provided medical treatment, and established an ongoing treatment relationship. AT 219-33. Thus, Dr. Newsome is a treating source. See 20 C.F.R. § 404.1502 (defining "[t]reating source" as one's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant). Accordingly, as a treating source, Dr. Newsome's opinion was entitled to controlling weight provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). In this case, the ALJ did not assign controlling weight to Dr. Newsome's opinion. Therefore, he was obligated to explain the weight given to Dr. Newsome's opinion, which he failed to do. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); see also Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *5 (SSA July 2, 1996). The ALJ's failure to explain the weight given to Dr. Newsome's opinion requires remand. Accordingly, the matter must be remanded for a proper evaluation of Dr.

Newsome's opinion.

### 2.     Dr. Petro

Plaintiff argues that the ALJ erred by assigning great weight to the opinion of Dr. Petro because "Dr. Petro's opinion was based on the opinion of Dr. Helprin," which was "vague to the point of being meaningless." Dkt. No. 23 at 20.

In his decision, the ALJ stated that he gave "great consideration" to Dr. Petro's opinion. AT 15. The ALJ explained that Dr. Petro is an expert in Social Security disability because she is a state Agency medical examiner. Id.

SSR 96-6p provides that ALJs and the Appeals Council "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and *must explain the weight given to the opinions in their decisions*." SSR 96-6p, 1996 WL 374180, at * 2 (SSA July 2, 1996) (emphasis added). Here, the ALJ failed to state the specific weight he assigned to Dr. Petro's opinion; instead the ALJ simply stated that he gave "great consideration" to this opinion. AT 15. Moreover, aside from noting that Dr. Petro is a state Agency review physician, the ALJ failed to explain why he gave "great consideration" to this opinion. See id. Therefore the matter must be remanded to correct this deficiency.[8]

### D.     Duty to Develop Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echeverria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982)). This duty is

---

[8] Plaintiff also apparently argues that the ALJ erred by relying on Dr. Helprin's finding that DF is "able to learn in accordance to cognitive functioning and interacts adequately with outside peers and generally with adults" because this finding is "too vague." Dkt. No. 13 at 8. However, it is unclear to what extent the ALJ relied on this specific finding, as the ALJ failed to state the extent to which he relied on this specific finding.

heightened when a claimant appears *pro se*. See Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing Cullinane v. Sec'y of HHS, 728 F.2d 137, 139 (2d Cir. 1984) (finding that remand for new hearing was appropriate where ALJ failed to assist *pro se* litigant in securing all relevant medical testimony)).

The regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources . . . ." 20 C.F.R. §§ 404.1512(d), 416.912(d). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. Devora, 205 F. Supp. 2d at 172. The regulations thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available." 20 C.F.R. §§ 404.1512(e), 416.912(e).

      1.    **Dr. Newsome**

Plaintiff contends that the ALJ failed to make a reasonable effort to obtain a medical source statement from Dr. Newsome or instruct Plaintiff to request that Dr. Newsome complete a medical assessment form. Dkt. No. 23 at 22.

"There is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing." Devora, 205 F. Supp. 2d at 174 (citing, *inter alia*, Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("[W]hen the claimant appears *pro se*, the combined force of the treating physician rule and of the duty to conduct a searching review requires

17

that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.")).  In this case, the ALJ had a heightened duty to develop the administrative record because Plaintiff proceed *pro se* prior to the issuance of the ALJ's decision.  AT 11, 241.  Therefore, the ALJ had an independent duty to obtain a report by Dr. Newsome as to the existence, nature, and severity of DF's condition.  However, the record contains no such report.

While the ALJ might have been able to discharge his obligation if he clearly directed Plaintiff to obtain a more detailed statement from Dr. Newsome, see Devora, 205 F. Supp. 2d at 175 (quoting Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990)), there is no indication that the ALJ directed Plaintiff to do so.  Accordingly, the ALJ did not fulfill his duty to develop a complete record with regard to Dr. Newsome.  Therefore, the matter must be remanded for a more complete development of the record.

### 2. Teacher and Case Worker

Plaintiff argues that the ALJ erred by failing to obtain clarifying evidence from DF's teacher, Ms. Ambrosch, and DF's case worker, Wendy Lowe.  Dkt. No. 13 at 8-10 & Dkt. No. 23 at 23.

While evidence from non-medical sources, such as school teachers and public social welfare agency personnel, may be used to show the severity of a claimant's impairment(s) and how it affects a claimant's ability to function, SSR 06-03p, 2006 WL 2329939, at *2, the regulations require an ALJ to obtain clarifying information only from medical sources.  See 20 C.F.R. §§ 404.1512(e), 416.912(e).  Therefore, the ALJ made no error because he was under no duty to obtain clarifying information from DF's teacher and case worker since these sources are non-medical sources.

18

**E.     Listings**

Plaintiff argues that the ALJ erred by failing to explain why DF's impairments met no listed impairments.  Dkt. No. 13 at 10 & Dkt. No. 23 at 23-24.

In his decision, the ALJ stated that "a review of the medical evidence alone establishes the existence of a 'severe' impairment, [but] it does not disclose medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4."  AT 12.  The Second Circuit instructs that in cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment.  Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Hendricks v. Commissioner of Social Security, 452 F. Supp.2d 194, 198-99 (W.D.N.Y. 2006).

In this case, while the ALJ discussed whether DF's impairments functionally equaled a listed impairment, AT 13-15, the ALJ failed to explain why DF's impairments did not meet or medically equal a listed impairment.  The ALJ simply stated in conclusory fashion that DF's impairment, while severe, did not meet or equal in severity the criteria of any listed impairment.  AT 12.  Since the ALJ failed to explain the basis for his finding that DF's impairment did not meet or equal a Listing, the Court is unable to determine whether his conclusion at step three is supported by substantial evidence.  Therefore the matter must be remanded.

**IV.    CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[9] for

---

[9] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

further proceedings consistent with the above; and it is further

       **IT IS SO ORDERED.**


DATED:      May 08, 2008
               Albany, New York

                         Lawrence E. Kahn
                         U.S. District Judge

---

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).